MAX EPSTEIN AND CHARLOTTE EPSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ALVIN B. GOLDSMITH AND FRANCES GOLDSMITH, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Epstein v. Commissioner
Docket Nos. 4718-79, 4719-79
United States Tax Court
T.C. Memo 1982-100; 1982 Tax Ct. Memo LEXIS 644; 43 T.C.M. (CCH) 666; T.C.M. (RIA) 82100; February 25, 1982. *644 Leonard M. Goldberg and Alan M. Stark, for the petitioners. Edward Hance and Alyce C. Halchak, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioner
Taxable Year
Deficiency
Epstein
1975
$ 1,502.89
Epstein
1976
1,357.40
Goldsmith
1975
1,878.62
Goldsmith
1976
1,984.59
The sole issue presented here for our decision is whether petitioners realized taxable income as a result of having received interest-free loans from a corporation in which each owned a 50 percent interest. All of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. A brief summary of the salient facts follows. Petitioners Max Epstein (Max) and Charlotte Epstein timely filed joint Federal income tax returns for the taxable years 1975 and 1976. At the time their petition in this case was filed, the Epsteins resided in the Bronx, New York. Petitioners Alvin B. Goldsmith (Alvin) and Frances Goldsmith timely filed joint Federal income tax returns for the *645 taxable years 1975 and 1976. At the time their petition in this case was filed, the Goldsmiths resided in Kings Point, New York. During the taxable years 1975 and 1976, Max and Alvin each owned 50 percent of the outstanding stock of Gordonian Printing Co., Inc. (Gordonian). Max was the president; Alvin the secretary-treasurer. Max and Alvin received identical $ 75,000 salaries in 1975 and 1976. Prior to the taxable years here in issue, Gordonian had made loans to Max and Alvin free of any interest obligations. The parties have stipulated that the average prime rate of interest during the years in 1975 and 1976 was 7 percent in each year. Interest computed at that rate on the outstanding principal loan balances in each of the years in issue is as follows: Max
Alvin
Taxable year
1975
1976
1975
1976
Loan balance
$ 36,354.41
$ 33,628.79
$ 49,967.50
$ 49,748.23
Interest at
7 percent *
2,544.81
2,354.02
3,497.22
3,482.37
Alvin and Max were neither obligated to pay, nor *646 did they pay, any interest on the monies received from Gordonian. Alvin owned no municipal bonds during 1975 and 1976. The same can be said for Max insofar as 1975 is concerned; however, during 1976 he purchased a New York State Power Bond for $ 15,000 and a New York City R.P.D. Bond for $ 5,000. The record does not show that there was any correlation in time or otherwise between the investments in the tax-exempt securities and the interest-free loans. In his statutory notice of deficiency, respondent determined that Max and Alvin realized taxable income representing the benefit received from the interest-free use of the money borrowed from Gordonian. Consequently, their taxable income was increased for each year in an amount equal to the interest on the outstanding loan balances computed at 7 percent, as shown in the table above. Respondent in an excellent brief attempts to convince us that is in error. We again must decline respondent's invitation to overrule , and the subsequent cases which have followed its result. See ; *647 Cf. , on appeal (9th Cir., Nov. 20, 1979). The First, Fifth, and Fourth Circuits have expressed their accord with our view. , affg. a Memorandum Opinion of this Court; , affg. a Memorandum Opinion of this Court, , and ; , affg. a Memorandum Opinion of this Court. As we noted in , cogent theoretical arguments could be advanced both for and against the result reached in Dean.[2] Nevertheless, noting that Dean had been on the books for 18 years and reflected an administrative practice of nearly six decades, we stated: [Dean] * * * has now been on the books for 18 years. Too much water has *648 passed over the dam to warrant reexamining the situation judicially. We think that the application of the principle of stare decisis is peculiarly called for here, and that if a contrary result is deemed desirable, the appropriate remedy should be legislative rather than judicial. [.] Petitioners purchased some tax-exempt bonds in a year subsequent to the loans in issue. There has been no showing that either in time or amount there is any relationship between the loan in issue and this purchase. No issue relating to this acquisition was raised in either the deficiency notice or the pleadings. In one paragraph of his brief, respondent implies that this should change the result without explaining why or how. In this respect, we again face the same circumstances as in We there stated that we would decide whether carrying the interest-free indebtedness to carry or purchase tax exempts makes Dean inapplicable "only when we are confronted with a case specifically raising the issue." . These words apply with even more force to the record before *649 us. Decisions will be entered under Rule 155.
Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
*. We assume that these principal amounts do not include any accrued imputed interest, by definition remaining unpaid at the start of the succeeding year.↩
2. See for example, the dissenting opinion of Judge Goldberg in .↩